# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAPP'S, INC., an Illinois Corporation, | ) |
| Plaintiff, | ) |
| | ) Case No. 18-cv-4135 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| TRAVIS GUSTAFSON, an individual, DIANNA GUSTAFSON, an individual, and STRATEGIC RAIL LLC, an Indiana limited liability company, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Happ's Inc. ("Happs")[1] brings this action against Travis and Dianna Gustafson and Strategic Rail LLC for violating the Illinois Trade Secrets Act and Illinois' Consumer Fraud and Deceptive Business Practices Act, conversion, tortious interference with business expectancy, and breach of fiduciary duty. The Gustafsons now move this Court to dismiss Happs' claims in their entirety for lack of jurisdiction and failure to state a claim upon which relief may be granted. For the following reasons, that motion [19] is denied.

**Background**

The following factual allegations from the complaint are taken as true for the purpose of the present motion. Happs provides railroad material salvage services to customers in the railroad industry, removing used materials from railroad right-of-ways and recycling or reselling it. Travis and Dianna Gustafson became Happs employees in 2010 and 2016 respectively. Travis was a field supervisor and Dianna was an office manager and human resources administrator. As a field supervisor, Travis was customers' point of contact for ongoing and future projects and was responsible for promoting the company to potential customers. As office manager and human

---

[1] For ease of reading, the Court omits the apostrophe from the name "Happ's" throughout this opinion.

resource administrator, Dianna had access to pricing agreements and bid documents, customer communications, and customer contact information. In 2017, Travis earned a salary of $78,000.00, received a $25,000 bonus, was reimbursed $3680.00 for travel expenses, and received a $2,250.00 company contribution to his IRA. Diana earned a salary of $118,499.68 in 2017, received a $3,000 bonus, and received a $3,418.25 company contribution to her IRA.

The Gustafsons incorporated Strategic Rail LLC in October 2017 to provide railroad reclamation services in competition with Happs. When Happs learned about Strategic Rail LLC in December 2017, it promptly terminated the Gustafsons' employment. Subsequent discussions with the Canadian Pacific Railway ("CP"), a Happs customer, revealed that in October 2017 Strategic Rail had removed materials from CP property but had misrepresented that the work was being performed by Happs or that Strategic Rail was affiliated with Happs, causing CP to bill Happs for the materials Strategic Rail removed. It was later learned that Travis had made similar misrepresentations to other customers. Subsequent investigation further revealed that between September 2017 and October 2017 Diane Gustafson emailed herself copies of Happs' employee handbook, safety manual, and Federal Railroad Administration ("FRA") compliance plan. Diana Gustafson also created a pricing spreadsheet based on Happs' master service agreement with the Canadian National Railway ("CN") during this time.

In October 2017, Travis Gustafson used a Happs vehicle and Happs funds to pay for a hotel room while he performed work for CP on behalf of Strategic Rail. Travis also used his Happs cell phone to conduct Strategic Rail business and, when he was terminated, transferred that number to his personal cell phone without Happs' authorization.

**Legal Standard**

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the fundamental question of whether a federal district court has subject-matter jurisdiction over the

action before it. Fed. R. Civ. P. 12(b)(1); *see, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (2012). In evaluating a motion brought under Rule 12(b)(1), the court accepts as true the plaintiff's well-pleaded allegations and draws all reasonable inferences in favor of the nonmoving party. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The court, however, may also look beyond the allegations and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction actually exists. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must assert factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

**Discussion**

The Gustafsons first contend this Court lacks jurisdiction because Happs has not satisfied the diversity jurisdiction amount in controversy requirement. In order for diversity jurisdiction to exist under 28 U.S.C. § 1332, there must be complete diversity of citizenship between the parties and the amount in controversy must be more than $75,000. *Neuma Inc. v. AMP, Inc.*, 259 F.3d 864, 881

(7th Cir. 2001). When there are two or more jointly liable defendants in a diversity case, a plaintiff is permitted to aggregate its damages across all claims and across all defendants. *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001).

The Gustafsons argue that Happs is only entitled to recover their salaries from October to December of 2017. Happs, however, has plausibly alleged that the Gustafson's began misappropriating Happs' resources in favor of Strategic Rail prior to that time, and the Gustafsons have offered no legal authority to support their position that "applicable law" limits the period of recovery. The Court accordingly rejects this unsubstantiated assertion.

The Gustafsons further challenge Happs' allegation that the appropriated corporate documents are worth hundreds of thousands of dollars. The Gustafsons, however, have already conceded that Happs stands to recover $74,004.48 based solely on its claims to recover their compensation and for misappropriated business opportunities. Even if Happs' allegations do not establish a value of hundreds of thousands of dollars, they convincingly establish that the materials taken cost in excess of $1,000 to produce and that their confidentiality gave rise to at least a portion of their overall value. The Court accordingly concludes that the allegations before it are sufficient to satisfy the amount in controversy requirement.

The Gustafsons contend that Happs failed to adequately plead conversion of property because the handbooks, safety manuals, pricing agreements, and FRA compliance plans which the Gustafsons emailed to themselves are intellectual property rather than tangible property. To recover for conversion in Illinois, a plaintiff must show (1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 779 (N.D. Ill. 2017) (Tharp, J.). While Illinois courts do not recognize an action for conversion of intangible rights, they

4

do recognize claims for the conversion of confidential information because a competitor's access to confidential information deprives the original owner of the benefit of that information. *Conant v. Karris*, 165 Ill.App.3d 783, 792, 520 N.E.2d 757 (1987). Here, Happs has clearly alleged that the Gustafsons' use of its confidential information has diminished that information's value. Happs has therefore adequately pled its conversion claim.

The Gustafsons also contend that Happs fails to state a claim for violation of the Illinois Trade Secrets Act. The Gustafsons first argue that Happs has not alleged the existence of any trade secrets. A trade secret is information that (1) is sufficiently secret to derive economic value from not being known but could provide economic value to other persons through its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. *Delta Med. Sys. v. Mid-Am. Med. Sys., Inc.*, 331 Ill. App. 3d 777, 789, 772 N.E.2d 768 (2002). The Gustafsons contend that the documents in question are not trade secrets because (1) Happs' pricing information and master service agreements are shared with customers, (2) Happs' employee handbook is shared with employees, and (3) Happs' FRA compliance plans are shared with the FRA and others. These disclosures, however, are not dispositive, because reasonable efforts to maintain secrecy include limiting disclosure to only those individuals who need access to the contents. *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 874 (N.D. Ill. 2001) (Denlow, Mag. J.). The contents of the materials in question were not known to the public or readily ascertainably from a public source, but instead were disclosed in a limited manner and subject to at least some efforts to maintain their confidentiality. These allegations are therefore adequate to establish the existence of trade secrets.

The Gustafsons alternatively contend that, if the documents in question were trade secrets, they were not misappropriated because they were freely available. Misappropriation, however, encompasses any improper means of acquisition of information, including the unauthorized

5

downloading of information. *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1361 (Fed. Cir. 2002); *RKI, Inc.*, 177 F. Supp. 2d at 875; *Packaging v. Hein*, No. 14 C 09670, 2015 WL 6164957, at *5 (N.D. Ill. Oct. 20, 2015) (Tharp, J.). Although Happs does not allege that it used secure document storage, surveillance cameras, specialized computer codes, or other security measures, the Gustafsons have not offered caselaw establishing that such measures are required to state a claim under the Trade Secrets Act. Accordingly, Happs has adequately alleged the misappropriation of a trade secret.

The Gustafsons next contend that Happs has failed to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. The Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFA") makes it unlawful to use deception or fraud in the conduct of trade or commerce. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). In order to state a claim under ICFA, a plaintiff must allege (1) a deceptive act or practice by the defendants; (2) the defendants' intention that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damages that were proximately caused by the deception. 815 ILCS 505/10a. Because ICFA claims sound in fraud, they are subject to the heightened pleadings requirements of Federal Rule of Civil Procedure 9(b). *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

The Gustafsons argue that Happs is not a "consumer" and therefore cannot bring a claim against them under ICFA. Competitors, however, can bring claims under ICFA as representatives of a consumer interest where the alleged conduct involves trade practices addressed to the market generally or otherwise implicates matters of consumer protection. *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill.App.3d 146, 159, 698 N.E.2d 257 (1998) (quoting *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill.App.3d 452, 458, 654 N.E.2d 1109 (1995)). Here, Happs has alleged two separate incidents in which the Gustafsons

6

allegedly lied to customers about Strategic Rail's association or relationship with Happs. These misrepresentations clearly deceived the recipient, as shown by the fact that customers sought to bill Happs for work performed by Strategic Rail. Although the Gustafson's argue that the "industry" in which they operate does not implicate traditional consumer protection concerns, that determination requires evidence as to the nature of the parties' businesses which is not presently before this Court. Accordingly, the Court concludes that at this stage Happs' claims fall within the scope of ICFA's protections.

The Gustafsons next assert that Happs has not pled its ICFA claims with sufficient particularity. Under Federal Rule of Civil Procedure 9(b), ICFA claims must allege the "who, what, where, and when of the alleged fraud." *Camasta*, 761 F.3d at 738. Here, Happs has specifically alleged the recipients of Travis Gustafson's allegedly misleading statements, the approximate timing of those statements, and the general content of those statements. Although the Gustafsons make much of the fact that these allegations are based on hearsay from the recipients of the statements, the Gustafsons have provided no caselaw suggesting that allegations in a complaint cannot be based on hearsay statements. Accordingly, Happs has adequately alleged its ICFA claims.

The Gustafsons contend that Happs has failed to state a claim for tortious interference with business expectancy. In order to state a claim of tortious interference with business opportunity, the plaintiff must allege a reasonable expectation of entering into a valid business relationship, the defendant's knowledge of the business opportunity, the defendant's purposeful interference in the business relationship, and that the defendant's interference resulted in damages. *Instant Technology, LLC v. DeFazio,* 40 F. Supp. 3d 989, 1020 (N.D. Ill. 2014) (Holderman, J.). A plaintiff alleging tortious interference with business expectancies is required to specifically identify the customer who contemplated entering into a business relationship. *Id.* Prior dealings, moreover, are not in themselves sufficient to establish a "reasonable expectation" of a business relationship. The

7

Gustafsons contend that Happs has failed to identify specific customers with whom it had a reasonable expectation of entering a business relationship. Happs, however, has specifically alleged that the Canadian Pacific entered into a contract with Strategic Rail while under the mistaken belief that it was dealing with Happs and that the Canadian Pacific "wanted to hire Happ's" for future projects but that Travis Gustafson redirected this opportunity to Strategic Rail. These allegations are sufficient, at this stage in the proceedings, to state a claim for tortious interference with a business expectancy.

Finally, the Gustafsons conclusorily contend that Happs has failed to state a claim for breach of fiduciary duty. In order to state a claim for breach of fiduciary duty under Illinois law, a complaint must allege that a fiduciary duty exists, that the duty was breached, and the breach proximately caused the alleged injury. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015). The Gustafsons sole argument is that, in light of their arguments for dismissing the prior counts, this Court cannot find a breach of fiduciary duty. In light of this Court's holdings as to the Gustafson's prior arguments, however, the Court rejects this conclusory assertion and holds that a breach of fiduciary duty has been adequately alleged.

**Conclusion**

For the foregoing reasons, the Gustafsons' motion to dismiss [19] is denied.

IT IS SO ORDERED.

Date: 5/15/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge